Rollins, S.
Upon the coming in of the report of the referee to whom were submitted the sixth account of this testator’s executors and the objections thereto, certain exceptions have been interposed in behalf of the accounting parties, and certain others in behalf of divers persons interested in the estate. As to* one of these exceptions it is on all hands agreed that in its main aspects it need not now be considered. This exception relates to the finding of the referee that, for the satisfaction of certain annuities and charges under the testator’s will, “the whole of the property now in their” (the executors’) “hands should be retained by them,” and no portion thereof be distributed at present among the other beneficiaries. The value of that property is shown by the account to be $484,781.34, but on behalf of certain objectors it is insisted that a portion thereof, amounting, as the account shows, to $29,109.01, should be treated as surplus income; and that, conceding for present purposes that all funds in excess of such $29,109.01 should be held intact to meet the annuities and charges, that sum, or such larger or smaller sum in excess of principal as upon the settlement of this account may be discovered to be in the executors’ hands, should be straightway distributed.
I think that this claim is well founded. By reference to Schedule B, parts two, three and four, it will appear that the gross income accounted for is $140,570.29; Schedule 0, discloses that the aggregate payments thereout amount to $111,300.28; the difference is $29,270.01. This sum seems to be a clear excess of income above annuities and other charges. To permit its retention for meeting the possible future demands of annuities would be to sanction an unlawful accumulation- (section 37, tit. 2, chap. 1, part 2, Eev. Stat., 3 Banks, [7th ed.,] 2178; sections 3 and 4, title 4, chap. 4, part 2, Eev. Stat., 3 Banks, [7th ed.,] 2259).
The surplus may therefore be distributed.
Second.—Exceptions have been filed to the conclusions of the referee respecting the amount of commissions to which he finds the executors entitled.
The basis for computation of commissions is fixed by the will. Its eighteenth article is as follows: “In lieu and exclusive of all other commissions and compensations to my executors for performing their duties under this will, and in addition to their actual and necessary disbursements and expenses, I authorize them to receive from my estate the following commissions, namely, on all sums to be *220 received from my said partner as my capital in said partnership and on all interest and income on investments in the public debt of the United States, or in county bonds, and on the proceeds of sale of real estate, one per cent, of the amount received, and on all sums received from personal property sold or rents, or the collection of debts owing to me or for income of other funds or investments, five percent. of the amounts received, and on all sums of money invested by them, two per cent, of the amount thereof. ”
Counsel for Beverly B. Tilden and Edward T. Kennard, as his trustee, objected before the referee to the allowance of five per cent claimed by the executors as commissions on the following items : One of §25,000 (the value of certain United States bonds left by decedent as a part of the assets of his estate, and subsequently called in by the government); another of §2,000 (the principal of Holy Trinity Church bonds collected by the executors); and a third of §500 (of a character similar to the item next preceding). These objections were overruled by the referee, who has found that all the bonds in question were debts owing tó the testator. This finding, so far as it relates to the church bonds, is doubtless correct; but the proposition that bonds of the United States Government, held by the testator at his death, must be deemed, within the meaning of the eighteenth clause of his will, “debts owing to me ” (him), is in my judgment, erroneous. In strict technical sense the import of the word “debt” is doubtless broad enough to cover bonds of every sort, as well those in which the state or government is obligor as well as those in which the party binding himself is a private individual. But in common parlance bonds of the United States are not spoken of as constituting or evidencing a debt of the United States, and the word “debt,” as ordinarily used in connection with the administration of decedents’ estates, has a narrower signification than is here sought to be put upon it.
If a testator should direct his executors to collect immediately after his decease all debts owing to him and to sell such as had not fallen due, and invest the proceeds of such collection and sale in United States bonds, it could scarcely be claimed that obedience to such direction would require the executors to dispose of whatever government securities should have come to their hands from their testator and straightway apply the proceeds to the purchase of others. When the executors who are here accounting surrendered to the government the registered bonds which have occasioned this discussion, it is very unlikely that they would themselves have characterized the transaction as the collection of a debt. It was not in pursuance of their duty to collect debts that they made the surrender, but because the *221 securities which they gave up would thenceforth bear no interest, and would accordingly cease to have the character of an investment. For rewarding the labors and stimulating the zeal of his executors ha the collection of debts, it seemed fit to this testator to allow them a commission of five per cent. And what were they instructed to do with the moneys obtained by such collections ? The will by its fourteenth clause specifies “registered stocks of the United States ” as the first-named among the securities in which the executors are directed to invest the funds of the estate. It will be observed also that by the eighteenth clause above quoted, the testator makes provision for commissions at one per cent, for the collection of interest and income “on investments in the public debt of the United States.” This phrase which is in close proximity to the phrase “debts owing to me, ” has the same meaning of course as the term “stocks” in article 14. There is, therefore, taking the two articles together, a direction by the testator substantially as follows: Collect all “debts owing to me,” and invest the proceeds in (among other things) the “public debt ” of the Uni':ed Skates. This is to my mind a very significant antithesis.
I have no doubt of the testator’s intention to give his executors liberal compensation for their services, and! might hesitate to adopt a construction • of article 18 which would exclude investments in United States bonds from the category of debts due the testator if the executors would be thus deprived of compensation for their care and pains in effecting an exchange of securities held by the testator for other securities of a similar character; but under the terms of the wall, as I interpret it, the executors became entitled upon such exchange to a commission of two per cent, which, indeed, they have already claimed and received.
The referee’s report allowing commissions at five per cent, upon this item of $25,000, must therefore be overruled.
Third. The conclusion just arrived at compels me to deny the application of the executors to be allowed an additional four per cent by way of commissions upon the value of certain other United States bonds found among the assets of the testator at his death and subsequently redeemed by the government.
Fourth. The remaining question upon which I am now asked to pass is clearly presented by the following stipulation entered into by the objectors:
“It will be conceded that during the period covered by the fifth accounting, and in accordance with the provisions of an agreement executed by the widow and four sons of the testator, and under the direction or supervision of the *222 executors, real estate left by the testator was valued by chosen appraisers at $525,190.66, and having been divided into four parcels was allotted to or among the four sons, to whom or for whose account the several allotments were respectively conveyed by the executors by deeds to which the widow and sons of the testator were also parties. No commissions on such value of real estate have been computed or realized by the executors, who now claim the same (amounting at the rate of one per cent, to $5,201.99) as having been erroneously omitted on the said fifth accounting.
The application of the executors for rectification of this error is to be heard and disposed of upon the same footing and with like effect as if any and all formal prehminaries had been had to enable the court to entertain and dispose of the application, and the executors are to be considered as moving in due form in so far as may be deemed necessary to reopen the decree upon the fifth accounting for the sole purpose of correcting the said error. But the other parties, while waiving all objections to preliminaries or to the form of the motion, do not conceive that the commissions ought to be computed and allowed as claimed, nor that the fifth accounting or the decree thereon ought to be reopened for that purpose.”
Upon this state of facts the question first presented is this: Are the executors precluded by the decree above referred to from obtaining the relief for which they now ask ? Their counsel insists that they are in a very different situation from that which they would occupy if they depended for their compensation upon the'provisions of the statute. He admits that in a case where in accordance with section 2736 of the Code of Civil Procedure, and section 58, title 3, chap. 6, part 2 Rev. St., 3 Banks, seventh ed., 2303, commissions had been allowed by the surrogate upon the settlement of a decree in an accounting proceeding, there might be grave doubts whether any additional commissions could subsequently be awarded with reference to any of the transactions covered by that decree, and equally grave doubts whether when a decree had been entered, making no mention of commissions or expressly disallowing them, commissions could subsequently be awarded. But it is claimed that a testamentary provision in favor of executors in lieu of the statutory compensation is substantially a legacy, and that, in the absence of any direction by the testator that such legacy shall be taken at any particular time, and that failing to take it at the time specified, the executors shall be thenceforth estopped from claiming it at all, they may claim and retain it at any time while they have funds in their hands applicable to that *223 purpose. I think there is much force in this.contention. This testator says at the close of the eighteenth clause of his will: “I authorize them” (the executors) “to receive from my estate the following commissions, namely” (then follows the scheme of allowances), “ such commissions to be in full for such services, and the amount to be divided among my executors from time to time, equitably, in proportion to their respective services.”
Under these circumstances I do not think it can fairly be claimed that the decree by which the fifth account was settled was an adjudication that the sum which appeared by such account to be charged as commissions was all the compensation to which the executors were then entitled, or that that decree affords any protection to those objectors against a present allowance as commissions of any sum, in addition to the sums whose retention was by that decree sanctioned, which the executors can now show themselves entitled to receive.
I am also of the opinion that if the relief claimed by the executors can properly be granted it may be given by the decree to be entered upon the present accounting, and without opening the decree entered upon the last.
Whatever right the executors may have to commissions upon the real estate partitioned among the devisees springs from the provision of the will which allows them “on the proceeds of the sale of real estate one per cent of the amount received.” While under some circumstances, and for some purposes, such a disposition of realty as was here effected might be regarded as a sale, it cannot, I think, be so regarded for the purposes now under consideration.
By the eleventh article of his will the testator gives all the rest and residue of his estate, real and personal, to his children in equal shares, subject to certain powers and directions in the will contained. Among those powers is the power which article twelve confers upon the executors; that of managing the share of each child during his minority. In article fourteen, the testator says: “I authorize and empower my executors to make, sign, seal, acknowledge and deliver any and all deeds and conveyances which may be necessary in order to carry into full effect any division they may make” {i. e., among the children) “or to declare or evidence the same, or in order to sell and convert into money or personal property any part of my real estate.”
I think that by this language a clear distinction is made between the authority of these accounting parties to execute conveyances for the purpose of carrying into effect a division in specie among the children, and their authority to execute such conveyances after the sale of real property *224 and its conversion into money or personal securities. And. I hold that five per cent commission on the proceeds of sale of real estate were not earned by the action of the executors in allotting such real estate among the devisees.